**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

JESSICA CALDERON, an individual,

     Plaintiff.

     v.

CITY AND COUNTY OF DENVER,
DENVER DEPARTMENT OF HUMAN SERVICES,
A municipal government entity,

     Defendant.

_____

**COMPLAINT AND REQUEST FOR JURY TRIAL**
_____

Jessica Calderon, the Plaintiff, by and through her attorneys, Steven L. Murray of Murray Law, LLC, and Thomas H. Mitchiner of Mitchiner Law, LLC, submits her Complaint and Request for Jury Trial against the Defendant City and County of Denver, including the Denver Department of Human Services. ["City" or "Defendant"].

This is an employment discrimination and retaliation case. Defendant intentionally discriminated against Ms. Calderon based on her national origin and the Defendant intentionally retaliated against Ms. Calderon because she engaged in lawfully protected activities.

**I. PARTIES**

1.    Ms. Calderon, a female, is a United States citizen and resident of Denver, Colorado.

1

2.      The Defendant, the City and County of Denver, is a municipal government entity conducting business in Denver, Colorado.

3.      Ms. Calderon works for the Defendant in Denver, Colorado.

4.      At all times in issue, Ms. Calderon and the Defendant resided, worked, and conducted business within the Judicial District of the Court.

## II.      JURISDICTION AND VENUE

5.      Jurisdiction is asserted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e, 2000e-5 and 2000e-5(f)(1)(3), *as amended,* the Civil Rights Act of 1991, 42 U.S.C. Section 1981a (a) (1) (2), (b) (1)-(4), (c) (1), (d) (1) (2). [Title VII]. Also, this Court has jurisdiction of this action pursuant to 28 U.S.C. Sections 1331, 1343 (a) (3) (4), and 1367(a).

6.      At all times material herein, pursuant to Title VII, Defendant was an employer of Ms. Calderon.

7.      The claims in issue, including all alleged unlawful employment actions, arose in the Judicial District of this Court.

8.      Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b) (c) (1) (2), and 42 U.S.C. Section 2000e-5(f) (3).

## III.      ADMINISTRATIVE PROCEDURES

9.      Prior to filing this action, Ms. Calderon timely, properly, and lawfully exhausted all required administrative prerequisites procedures and remedies.

10.     Ms. Calderon filed timely charges of discrimination and retaliation with the United States Equal Employment Opportunity Commission [EEOC]. [EEOC Charge No. 541-2018-03261.

11.     On September 30, 2019, the EEOC mailed a Notice of Right to Sue letter to Ms. Calderon.  This action is timely filed because it is filed within ninety days of Ms. Calderon's receipt of the Notice of Right to sue letter issued by the EEOC.

## IV.     NATURE OF THE CASE

12.     This Complaint asserts violations of Title VII. This action seeks legal and equitable relief for the Defendant's intentional and unlawful national origin discrimination and retaliation against Ms. Calderon for participation in protected equal employment opportunity activities.

## V.  GENERAL ALLEGATIONS

13.     Ms. Calderon is a Hispanic female.

14.     Ms. Calderon, an employee of the Defendant, has served as a dedicated employee of the Defendant from May 2004 through the present.

15.     Presently, Ms. Calderon serves as a Learning and Development Specialist in the Mayor's office of Social Equity and Innovation.

16.     The events at issue occurred during Ms. Calderon's service as a Social Case Worker Supervisor in the Denver Department of Human Service, Child Welfare's Child Protection Department.

17.     Ms. Calderon has an exemplary performance and disciplinary record during her fourteen years of employment with the Defendant.

18.    Mollie Warren and Joanne O'Callaghan are central figures in the events at issue in Ms. Calderon's discrimination and retaliation claims.

19.    Ms. Warren and Ms. O'Callaghan are White females.

20.    Ms. Warren served as Ms. Calderon's and s. O'Callaghan's supervisor.

21.    Ms. Warren served as the selecting official and/or the official with the effective authority to make decisions for one or more positions: (1) to  which both Ms. Calderon and Ms. O'Callaghan applied; (2) for which the Defendant selected Ms. O'Callaghan over Ms. Calderon; (3) for which Ms. Warren informed Ms. Calderon that she should not apply;  and (4) for which Ms. Calderon applied for and was denied an interview.

22.    Ms. Warren was the effective decision maker for decisions and adverse actions which caused Ms. Calderon to suffer unlawful discrimination/retaliation.

23.    Ms. Warren treated Ms. O'Callaghan more favorably than she treated Ms. Calderon concerning the terms, conditions, and privileges of employment and standards of conduct for Defendant employees.

24.    As of February 1, 2018, Ms. Calderon was serving as a Learning and Development Supervisor [L&D Supervisor].

25.    In April-May 2018, Ms. Calderon's relationship with Ms. Warren was strained and harmful to Ms. Calderon.

26.    In April-May 2018, Ms. Warren began treating Ms. O'Callaghan more favorably than Ms. Warren treated Ms. Calderon.

27.     In this period, Ms. Warren's treatment of Ms. Calderon worsened after Ms. Calderon engaged in protected Title VII activity by complaining about Ms. Warren's treatment of Ms. Calderon, her, which included diminishing her credentials, coded language, and belittling,

28.     On or about June 22, 2018, Ms. Warren informed Ms. Calderon, Ms. O'Callaghan, and a third person, about upcoming organizational changes.

29.     These changes involved the Defendant eliminating two of the three Learning & Development Team Supervisor positions [L&D Supervisor].

30.     The three incumbent L&D Supervisors, including Ms. Calderon and Ms. O'Callaghan, were given the option of choosing a voluntary demotion to a Lead Social Case Worker position within the L&D Team or to participate in a competitive process to retain L&D Supervisor role.

31.     Ms. Calderon entered the competitive process to retain their existing jobs: L&D Supervisor. They were the only competitors for the position.

32.     Ms. Calderon and Ms. O'Callaghan were the only competitors for the position.

33.     Ms. Warren possessed and exercised the authority to make the hiring decision about which employee would remain in the L&D Supervisor role.

34.     On July 2, 2018, Defendant informed Ms. Calderon that she had not been selected and that Ms. O'Callaghan had been selected for the position.

35.     Defendant told Ms. Calderon that she did not get the position because she had "too much high-level vision" and the Defendant needed someone who could "manage the day to day."

36.     Ms. Calderon was more qualified for the position than Ms. O'Callaghan.

37.     Ms. Calderon: (1) has a Master's Degree and Ms. O'Callaghan did not have this degree; (2) has more relevant job experience than Ms. O'Callaghan, was successfully performing in the Unit for six months prior to Ms. O'Callaghan joining the Learning and Development Unit; (3) created most of the Learning and Development program prior to Ms. O'Callaghan's arrival in the Unit; (4) was a more reliable supervisor and employee than Ms. O'Callaghan; and (5) possessed professional certifications and credentials which Ms. O'Callaghan did not have.

38.     On or about July 2018, Ms. Calderon engaged in Title VII protected activity by complaining of national origin discrimination to Mimi Scheuermann, the Child Welfare Director, and Tammy Davis from HR.

39.     Ms. Calderon reported that she felt discriminated against by Ms. Warren because of her non-selection for the L&D Supervisor position.

40.     Ms. Calderon explained to Ms. Scheuermann and Ms. Davis than she was more qualified than Ms. O'Callaghan and she was more responsible than Ms. O'Callaghan.

41.     Ms. Scheuermann and Ms. Davis dismissed Ms. Calderon's claim of discrimination; stating the panel was fair and that Ms. Warren was "really good at the interviewing process."

42.     In the continued reorganization process, Ms. Warren treated Ms. O'Callaghan more favorably than she treated Ms. Calderon.

43.     In July 2018, Ms. Calderon applied for the following open position: Learning, Evaluation and Development ("LEAD") Program Manager.

44.     Esmeralda Santillano, the alleged decision maker for the LEAD position, stated to Ms. Calderon that it was "Mollie's [Ms. Warren's] hire" and that "Mollie has a timeline of how she wants it all to roll out."

45.     On September 7, 2018, Ms. Calderon received a call from Ms. Davis and Ms. Warren, informing her that she was not selected for the LEAD position. They said Ms. Calderon was lacking in data knowledge and they had concerns about her leading two teams.

46.     Ms. Warren and Ms. Davis informed Ms. Calderon that: (1) the Defendant was not picking anyone to serve in the LEAD position; (2) the Defendant was going to repost the position; (3) Ms. Calderon did not need to reapply if the position was reposted because she did not have the leadership competencies or if she did not have the competencies, she could not rehearse for such perceived shortcomings.

47.     Later, on September 10, 2018, Ms. Warren provided Ms. Calderon a written summary of feedback about why she was not selected for the role. Ms. Warren's primary criticism of Ms. Calderon was her alleged lack of leadership skills.

48.     The Defendant: (1) did not inform Ms. O'Callaghan that she could not reapply for the position; and (2) informed Ms. O'Callaghan that she could be mentored or coached on her shortcomings if she wanted to be coached/mentored.

49.     On or about September 13, 2019, Ms. Calderon engaged in protected Title VII activity in a meeting with Ms. Scheuermann. Ms. Calderon complained that she had been discriminated against for the two positions, and that Ms. Warren was retaliating against her for objecting to the way she had been treated by Ms. Warren.

50.     Ms. Calderon had planned to file her grievance with Ms. Scheuermann; however, Ms. Scheuermann was dismissive by stating: (1) "really, really?" about the discrimination claim; and (2) directing Ms. Calderon to "think about what you really want" in reporting her concerns.

51.     Ms. Calderon did not file her grievance with Ms. Scheuermann.

52.     In the same week of September 20, 2019, Ms. Calderon met with Don Mares, Denver Department of Human Services Manager. In this meeting, Ms. Calderon complained about: (1) the discrimination and retaliation she had suffered; and (2) despite her reporting the discrimination and retaliation, the Defendant had not taken any action to protect her from continued discrimination/retaliation and the Defendant had not investigated or remedied the problems.

53.     Mr. Mares asked Ms. Calderon to talk to Kat Barker, the HR director, before filing her grievance. By this directive, Mr. Mares attempted to delay the filing of Ms. Calderon's grievance.

54.     Ms. Calderon signed her grievance, dated September 18, 2018. The grievance alleged discrimination against Ms. Calderon. On September 26, 2018, Ms. Calderon submitted filed her grievance, via email, to Kat Barker, HR Director.

55.    Ms. Barker asked Ms. Calderon to meet with her before <u>formally</u> filing the grievance. As with Mr. Mares, Ms. Barker attempted to delay Ms. Calderon in the filing of her grievance.

56.    Ms. Calderon met with Ms. Barker. Ms. Calderon complained to Ms. Barker about the discrimination and retaliation she had suffered.

57.    On October 4, 2018, Ms. Calderon filed her updated grievance, in which she alleged discrimination by Ms. Warren when she offered to mentor Ms. O'Callaghan.

58.    On October 10, 2018, Ms. Calderon met with Ms. Barker, and Ms. Scheuermann. Ms. Scheuermann said the decision had been made to hire Ms. O'Callaghan for the L&D Supervisor position and the Defendant believed it was a fair decision.

59.    On October 15, 2018, Ms. Calderon met with the Employee Relations Team of the City at the Webb building, for an interview to address her official grievance.

60.    On October 23, 2018, Ms. Calderon applied for the following position: Modified Learning and Development Manager - Administrator II. This position was the reposting of the LEAD position for which she previously applied; however, the job duties had changed, and Ms. Calderon reapplied.

61.    Ms. Calderon was more qualified for this position than she was at the time she previously applied for this LEAD position.

62.    On November 14, 2018, Ms. Warren informed Ms. Calderon that she would not be interviewed for the position because the Defendant was looking to hire a candidate with more experience leading teams and vision for the new LEAD section.  Also, Ms.

Warren stated that she needed someone who would be able to work with her, and with members of the combined leadership team.

63.   In November 2018, Ms. Calderon learned that two of her colleagues, White females, had received  interviews for the Administrator II position, the position for which the Defendant had denied Ms. Calderon an interview.

64.   In February 2019, the Defendant announced that the Learning and Development Manager Administrator II position was filled by a White female.

65.   On November 27, 2018, Ms. Calderon received an email from the City and County of Denver's Employee Relation's office informing her that it had completed the investigation of her official grievance and notifying her that the findings would be sent to the Defendant. The Employee Relations' email informed Ms. Calderon that Employee Relations would not tolerate future retaliation.

66.   On the same day, Ms. Calderon replied to the email from Employee Relations, stating that she believed she had been retaliated against for filing her grievance.

67.   On November 27-28, 2019, Ms. Calderon met with Mark Ellis and she told him that she felt Ms. Warren  had retaliated against her. Ms. Calderon explained that she had worked with many members of leadership over the years and she had never had any problems.   Thus, there was no justification for Ms. Warren informing her that she was not able to work with leadership.

68.   In response, Mr. Ellis stated that "she [Ms. Warren] should not have used those words" and that Ms. Warren was coached immediately afterward about not having used these terms."

69.   Mr. Ellis gave Ms. Calderon a letter from Joe Holmar, Executive Director for Child Welfare, stating that her grievance was unfounded, and no action would be taken.

70.   On the next day, November 28, 2018, Ms. Calderon forwarded the email to Mr. Ellis to inform him that she had reported the retaliation of not being interviewed to the Employee Relations Specialists. He replied: "as I mentioned, I immediately gave [Ms. Warren] feedback regarding the words she used in letting you know she was moving forward with other candidates."

71.   Mr. Ellis stated that he would inform Ms. Calderon if any further action would be taken. Ms. Calderon has never been informed that any further action had been taken concerning Ms. Warren or if any other remedy was available to her about the retaliation.

72.   Defendant engaged in unlawful and intentional national origin discrimination and retaliation against Ms. Calderon.

73.   As a direct, foreseeable, and proximate result of the Defendant's unlawful, intentional discrimination and retaliation complained of herein, Ms. Calderon suffered injuries and losses, including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and the potential and/or actual loss of wages, earnings, income, benefits, diminution of earning capacity, actual and/or potential retirement benefits, and future pecuniary losses.

## VI.  CLAIMS FOR RELIEF

### FIRST CLAIM

### [National Origin – Learning & Development Team Supervisor]

74.    Ms. Calderon incorporates all prior paragraphs of this Complaint and reasserts the prior paragraphs herein.

75.    This claim addresses Defendant's discriminatory treatment of Ms. Calderon concerning the Defendant's conduct and decisions in the competitive process for the retention and selection of a candidate for the continuing position of Learning & Development Team Supervisor [L&D Supervisor].

76.    Title VII forbids the Defendant, a covered employer, from: (1) discriminating against any individual with respect to terms, conditions, or privileges of employment, because of such individual's national origin. 42 U.S.C. Section 2000e–2(a)(1); and (2) limiting, segregating, or classifying any employee in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's national origin. 42 U.S.C. Section 2000e–2(a)(2).

77.    Ms. Calderon entered a competitive process to retain her existing job: Learning & Development Team Supervisor.

78.    On July 2, 2018, Defendant informed Ms. Calderon that she had not been selected and that Ms. O'Callaghan had been selected for the position.

79.    Ms. Calderon's belongs to a protected Title VII class because she is a Hispanic female.

80.     Ms. Calderon applied for the position and she was qualified for the position.

81.     Despite Ms. Calderon's qualifications, Defendant did not select her for the position.

82.     Defendant filled the position with the selection of Ms. O'Callaghan, a White female.

83.     Ms. O'Callaghan is outside of Ms. Calderon's protected class, Hispanic employees.

103.    Ms. Calderon was more qualified than Ms. O'Callaghan based on Ms. Calderon based on Ms. Calderon's education, credentials, experience, employee conduct record, and support of the team.

84.     Defendant's justifications for the non-selection of Ms. Calderon are unworthy of credence and the Defendant did not act for any asserted non-discriminatory reasons

85.     Ms. Warren's involvement in the selection professional is unfairly prejudicial because of her actions in treating Ms. Calderon less favorably than Ms. Warren treated white females.

86.     Ms. Calderon's non-selection was not based on a fair, objective, and credible assessment of her credentials or qualifications, compared to Ms. O'Callaghan's credentials and qualifications.

87.     Defendant used discriminatory subjective reasons/standards to deny Ms. Calderon the position and opportunities for which she was more than qualified under a fair system of evaluation.

## SECOND CLAIM

### [National Origin Discrimination – LEAD Manager]

88.     Ms. Calderon incorporates all prior paragraphs of this Complaint and reasserts the prior paragraphs herein.

89.     This claim addresses Defendant's discriminatory treatment of Ms. Calderon concerning the Defendant's conduct and decisions in the competitive selection process for the LEAD Manager position.

90.     Ms. Calderon applied for the LEAD position.

91.     Defendant did not select Ms. Calderon to serve in the LEAD position.

92.     Defendant cancelled the selection process for the LEAD position.

93.     Defendant informed Ms. Calderon that the position would be reposted.

94.     Defendant informed Ms. Calderon that when the position was reposted, Ms. Calderon **should not apply/did not need to reapply,** because she did not have the leadership competencies and if she did not have the competencies, she could not rehearse for such perceived shortcomings.

95.     Defendant committed discriminatory actions against Ms. Calderon by: (1) cancelling the hiring for the LEAD position; (2) informing that Ms. Calderon should she not apply in the future, thus, effectively barring her from competing for the position forever; (3) not barring Ms. O'Callaghan from applying for the position in the future; and

(4) offering to provide mentoring to Ms. O'Callaghan and not offering to provide training/mentoring to Ms. Calderon.

96.     Ms. Calderon's belongs to a protected Title VII class because she is a Hispanic female.

97.     Ms. Calderon applied for the position and she was qualified for the position.

98.     Ms. Calderon was qualified for eligibility to apply for the position in the future.

99.     Ms. Calderon was qualified for eligibility to receive mentoring from the Defendant and Ms. Warren to compete for the position in the future.

104.     Despite Ms. Calderon's qualifications, Defendant did not: (1) select her for the position; (2) permit her to apply for the position in the future; and (3) offer to provide her mentoring for the position.

100.     Defendant's justifications for its treatment of Ms. Calderon, concerning the LEAD position, are unworthy of credence and the Defendant did not act for any asserted non-discriminatory reasons

### **THIRD CLAIM**

**[National Origin – Modified Learning & Development Team Manager/Admin II]**

101.     Ms. Calderon incorporates all prior paragraphs of this Complaint and reasserts the prior paragraphs herein.

102.     This claim addresses Defendant's discriminatory treatment of Ms. Calderon concerning the Defendant's conduct and decisions in the competitive process

for the selection of a candidate for Modified Learning & Development Team Manager – Administrator II.

103.    On October 23, 2018, Ms. Calderon applied for this position, which was the reposting of the position for which she previously applied.

104.    Ms. Calderon was more qualified than when she previously applied for this position.

105.    On November 14, 2018, Ms. Warren informed Ms. Calderon that she would not be interviewed for the position.

106.    In November 2018, Ms. Calderon learned that two of her colleagues, White females, had received interviews for the Administrator II position, the position for which the Defendant denied Ms. Calderon an interview.

107.    In February 2019, Defendant filled the potion by hiring, a White female.

108.    Concerning the White females that the Defendant selected to interview for the position and the White female who was selected to fill the position, to Ms. Calderon's knowledge, these persons had less, equal, or similar education to Ms. Calderon, and these persons had no experience or less experience than Ms. Calderon in child welfare, data, and family meeting facilitation.

109.    Ms. Calderon's belongs to a protected class because she is a Hispanic female.

110.    Ms. Calderon applied for the position and she was qualified for the position.

111.    Despite Ms. Calderon's qualifications, the Defendant did not permit her to interview for the position.

112.    Defendant eventually filled the position, for which Ms. Calderon was denied the opportunity to apply and be interviewed, by hiring a White female candidate, who possessed similar or fewer qualifications, than the qualifications possessed by Ms. Calderon's knowledge.

## FOURTH CLAIM

## [Retaliation]

113.    Ms. Calderon hereby incorporates and restates all allegations previously asserted in this Complaint as though fully incorporated herein.

114.    This claim is for unlawful retaliation under Title VII. This provision provides that it is an unlawful employment practice for an employer to discriminate against any of its employees because she has (1) opposed any practice made an unlawful employment practice; or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.  42 U.S.C. Section 2000e–3(a).

115.    As set forth in detail in the above section of this Complaint, "V.  GENERAL ALLEGATIONS", Ms. Calderon participated in numerous protected Title VII activities and she opposed conduct prohibited by Title VII. Ms. Calderon's protected activities include but are not limited to the allegations in the paragraphs 27-70 of this Complaint.

116.    At all times, the Defendant was fully aware of Ms. Calderon's protected Title VII activities.

117.    Defendant subjected Ms. Calderon to a series of increasingly severe materially adverse employment actions. These materially adverse actions are set forth in the above section of this Complaint, "V.  GENERAL ALLEGATIONS."

118.    The Defendant's materially adverse actions include but are not limited to the Defendant's conduct concerning: (1) the selection process for the L&D Supervisor position for which the Defendant selected Ms. O'Callaghan over Ms. Calderon; (2) all events relating to the application and selection process for the LEAD Manager position for which Ms. Calderon applied and the Defendant cancelled the position, and the Defendant's treatment of Ms. Calderon concerning her status after this process; (3) the treatment Ms. Calderon concerning the application and selection process for the Modified LEAD Manager position; (4) the Defendant's refusal to give proper consideration to her multiple complaints of discrimination and retaliation; and (5) the Defendant's and Ms. Warren's consistent pattern of taking actions in which the employment terms, conditions, and privileges of While applicants and employees were favored over Ms. Calderon's terms, conditions, and privileges of employment.

119.    The Defendant and Ms. Warren engaged in a purposeful and increasing campaign of retaliation to harm Ms. Calderon's professional interests and emotional wellbeing.

120.    The Defendant's materially adverse actions occurred contemporaneously with, or shortly after Ms. Calderon's protected activities.

121.    A causal connection exists between Ms. Calderon's protected activities and the materially adverse employment actions.

## **REQUEST FOR RELIEF**

WHEREFORE, Ms. Calderon respectfully requests this Court to enter judgment in her favor and against Defendant on all claims asserted in this Complaint and Request for Jury Trial, and in addition, for the following relief:

(1)     To enter a judgment in favor of Ms. Calderon and against Defendant, finding the acts of the Defendant constitute continuing and intentional national origin discrimination in violation of Title VII.

(2)     To enter a judgment in favor of Ms. Calderon and against Defendant, finding the acts of the Defendant constitute continuing and intentional discrimination, in the form of retaliation, in violation of Title VII.

(3)     To award Ms. Calderon the remedies of damages for back pay, restored benefits, actual monetary damages, loss of wages, salary, retirement contributions, all loss of income and all loss of monetary damages to which she is entitled, pursuant to Title VII.

(4)     To award Ms. Calderon compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, future pecuniary losses, and all loss of compensatory damages to which she is entitled, pursuant to Title VII.

(5)     To award Ms. Calderon reinstatement, or in the alternative, front pay, pursuant Title VII.

(6)     To award Ms. Calderon attorney fees and costs, pursuant to the pursuant to Title VII.

(7)     To award Ms. Calderon pre-judgment and post-judgment interest at the appropriate rate provided by law.

(8)     To direct the Defendant to take such affirmative relief steps as are necessary to ensure that the effects of the Defendant's unlawful employment practices are eliminated and do not continue to affect Ms. Calderon's employment opportunities.

(9)     To award Ms. Calderon any and all other legal and equitable relief, to which Ms. Calderon is entitled pursuant to any law, that this Court deems just, equitable, and proper.

### VII. JURY TRIAL REQUEST

Pursuant to Fed.R.Civ.P. 38 (a)(b)(c), 42 U.S.C. Sections 2000e-5, 2000e-6, 2000e-8, and 2000e-9, and 42 U.S.C. Section 1981a (a)(1), (b)(1)(2)(3)(D), and (d)(1)(2), and all applicable laws providing for a right to trial by jury, Ms. Calderon requests a jury trial of all claims and issues in this action.


Dated: December 19, 2019.

Respectfully submitted,


*/s/ Steven L. Murray*
Murray Law, LLC
1888 Sherman Street, Suite 200
Denver, CO 80203
Telephone: (303) 396-9952
E-mail: steven@smurraylaw.com

_/s/Thomas H. Mitchiner_
Mitchiner Law, LLC
1888 N. Sherman St. Suite 200
Denver, CO 80203
Telephone: 720.538.0371
Email: tmitchiner@mitchinerlawllc.com

Plaintiff's Address:
611 Lowell Blvd.
Denver, CO  80204